Bit the Court. J

These persons have been 4 . rested by a warrant, issued by me, on an affidavit made by the Marshal, that he believes them to be alien enemies who have neglected of refused to obey the notification of the government respecting them. They deny that they are alien enemies, and insist that as they were bona-fide inhabitants of the Territory of Orleans, at the time of its admission into the Union, they became citizens of Louisiana and consequently citizens of the U. States.
It is well known that some of these persons have been discharged by one of the Judges of the State, but as the Marshal and many others are seriously impressed with a belief that they are not citizens, but aliens, it has been deemed proper to obtain the opinion of the Judge of the United States.
Ix is contended by the attorney of the United States, that Congress alone have the power to pass laws on the subject of the naturalization of foreign; *734 and that by the constitution it is declared that die rule for their admission must be uniform. On the other hand, it is said that congress have the . , ° TT . , power to admit new states into the Union ; that this power is not inconsistent with nor repugnant to the other ; that the first rule well applies where individual application is made for admission, but is not restrictive of the other power to admit at once great bodies of men, or new states into the Federal Union.
The power tondmit new states is expressly given by the 3d s*tion of the 4th article of the constitution. It has been frequently exercised, and on the 30th of April, 1812, Louisiana was admitted into the Union, upon the same footing with the original states.
In what manner has this power been exercised with respect to other states ? On the 30ih of April 1802, the inhabitants of the eastern division of the territory N- W. of Ohio were authorised to form for themselves a constitution and state government ; this was done and they were after-wards admitted into the Union ; previous to their admission the people of that country were governed by what is commonly termed the Ohio ordinance ; that the population consisted partly of citizens of the United States and partly of foreigners may be collected from the provisions of that instrument for their government ; that a great 1*Gdy of aliens resided among them is known to *735 many. It k declared that possessing a freehold fifty acres of land, having been a citizen of one of the states, and being resident in the district, or the like freehold and two years residence, shaft be necessary to qualify a man as an elector. Hete there are too descriptions of persons, 1st. citizens of the U. States with a freehold and actual residence, and, 2d. persons not citizens, with a freehold and two years residence ; were they not all equally inhabitants ? and in the act of admission is there any distinction made ? The inhabitants then who were authorised to form a static government for themselves, must have been all the real inhabitants of the country, citizens or foreigners, ‘ and after the admission of the state into the union, must have equally participated in all its advantages, be* cause, if a party only were entitled to its benefit all the inhabitants had not formed a government for themselves. Can we, for an instant, believe that a wise, just and liberal government, like that of the United States, .would invite any portion of people who were enjoying seif government in a considerable degree, to place themselves in a situation where they would be-entirely deprived of it?
,1 can have no doubt that all the inhabitant^ of the State of Ohio were admitted citizens of that state by their admission into the union.
Let us then examine and discover (if possible) any difference between the case of that state and. *736 this, Louisiana, it is said, was admitted uncía4-the treaty of Paris, by which it is stipulated that the inhabitants lhall be incorporated into the union of the United States and admitted as soon as pos, sible, according to the principles of the federal constitution, to the enjoyment of all the rights, advantages and immunities of citizens of the United States. It is then contended by some, that the word inhabitants used in the act of February 18 U,,applies solely to those who were inhabitants in 1803.
On the llth ^bhruary 1811, congress passed an act “ enabling the people of the Territory of Orleans to form a state government.” It commences by declaring that the “ inhabitants” of all that part of the country ceded under the name of Louisiana shall be authorized to form for themselves a state government : it then goes on and describes two classes of inhabitants ; 1st. citizens of the United States, and all persons having in other respect the legal qualifications to vote for representatives in the general assembly. Those qualifications are the same as those of Ohio ; twoyears residence and a freehold for those who are not citizens. We here find no distinction between the old inhabitant and the new, the man who has been here two years and has fifty acres of land, let him be citizen or alien, is authorized to join in making a constitution for all the inhabitants of Louisiana. The law then, evidently, does not *737 mean merely‘Hhe inhabitants at the date of the treaty” and ⅜ will be found that the only question in this case is, whether congress had a right to include any others than citizens in their a^t of admission, I have already shewn that they have exercised this right heretofore, that in the case of the state of Ohio it was not disputed, and it does npt become us at this time to question it.
I s h a lx now consider some of the arguments that have been urged by the district attorney and his colleague. Although an, attempt was made to distinguish between the two classes of inhabitants (not originally eitiaens of the United States), yet, in truth, their arguments go as well to exclude, the first as the last class. It is contended that the qnly mode by which an alien can be naturalized ⅛, by a compliance with the uniform rule. That this is the only constitutional mode; that the expression in ths treaty “ that the inhabitant shall be admitted accmdfog to the principles of the con, stitutfou” means, according to the uniform rule required by the constitution. If so, the Creoles qf Louisiana are not citizens yet, few not one of them has complied with; thgt law ; but one of the gentlemen ⅛£ observed, here is a treaty, and treaties are paramount. I cap never subscribe to the doctrine that treaties can do away any part of constitution.; I will go as far as any one fo sup-Berting «id observing them in any thing not re, *738 pugnant to it. If then the uniform system be the only constitutional one, any other must be unconstitutional, and though introduced by treaty, is void. If this were the only constitutional mode, I should tremble for the fate of the Louisianians ⅛ but fortunately for them and for others, it is not the only one. The expression under the treaty is, that they shall be admitted according to the principles of the constitution, that is, with the consent of congress, which shall be obtained as soon as possible, and it has been since given. By this construction every part is reconciled, and if congress in their liberality included others who have since settled in the country, they had a right to do so.
It is said that the law respecting alien enemies, declares, that they shall all be apprehended unless actually naturalized, and it is contended that the only actual naturalization is by the uniform rule. This does not follow : if it did there Is scarcely a Creole who in case of a war with France or Spain would not be subject to its penalties, for none of them have complied with it. The government has a right, by treaty, or by the admission of a new state to naturalize, and such naturalization is equal to the other. Let us suppose, what is honestly believed by many, that altho’ the form of government changed, yet the political character of individuals remained the same, let us ask who *739 would compose the state ? For (as the. learned gen-tlema&at the bar observed) the state 'does not Gonsist of land, water and trees ; it is composed ' of men, women and children. Some say the old Louisianians and the few citizens of the U. States who have settled since the treaty ; no, say others, thl old Louisianians have not been admittted according to the uniform rule, and they have nothing to do with it, apd as to the new comers, not citizens, they are Amt of the question. The uniform rule would unquestionably place the original citizens of the the U. States in a more important situation ⅝ it would give them all the power of the country. But the government of the United States intended otherwise ; they called upon the actual inhabitants of the country to form a government for themselves ; they promised them if they should not disapprove of it, that all of them should enjoy its advantages and be members of it; who those inhabitants were will be a subject of strict enquiry. It has been observed that it will be almost impossible to fix any certain rule on this subject ; but it appears to me there will he no difficulty. An inhabitant is one whose domicil is here and settled here with an intention to become a citizen of the country ; I conclude in agreeing with the judges of the late superior and state courts, that by the several acts of congress and the admission of the State of Louisiana into the union., all the bona fide inhabitants *740 became citizens of this slate. Desbois' case, & Martin 185.
ÍRlSONERS DISCHARGED.
*** In pursuance of this decision, a considerable number oi persons, born in the dominions of she King of the United Kingdéms of -Gcr&t Britain and Ireland, who had resided in Louisiana, under the Territorial government, ceased to be considered by the Marshal at British subjects, and as liable to the restrictions imposed on alien enemies. >...